HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLYNNE R. HARRIS, as Trustee of the EDITH HEINEMANN HARRIS TRUST,

Plaintiff,

v.

DAVID S. MUNDEL, as Trustee of the AUGUST B. MUNDEL and JOAN WEBB MUNDEL TRUST,

Defendant.

CASE NO. C17-1107 RAJ

ORDER

**I.     INTRODUCTION**

This matter comes before the Court on Defendant David S. Mundel's Motion to Dismiss. Dkt. # 4. Plaintiff Carolynne R. Harris opposes the Motion. Dkt. # 10. For the reasons set forth below, the Court **GRANTS** Defendant's Motion. Dkt. # 4.

**II.    BACKGROUND**

As a preliminary matter, Defendant submitted several documents in support of his Motion. Dkt. ## 5-7. Defendant requests that the Court take judicial notice of some of the documents because their contents are alleged in the Complaint and Plaintiff does not

ORDER- 1

question their authenticity. Defendant further requests that the Court take judicial notice of the other submitted documents because they are documents from state court proceedings that he alleges are related to this matter.

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court can take judicial notice of undisputed matters of public record, including documents on file in federal or state courts. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see also Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n. 2 (9th Cir. 2002). Documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents. *Lee*, 250 F.3d at 688; *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).

The Court takes judicial notice of the amended version of the 1988 Trust Agreement (Dkt. # 12 Ex. 1), the Edith Heinemann Harris Trust Agreement (Dkt. # 5 Ex. 2.), the Demand Promissory Note (09) (Dkt. # 5 Ex. 4), and the Demand Promissory Note (10) (Dkt. # 5 Ex. 5). All of these documents are documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [Plaintiff's] pleading." *Knivel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Plaintiff filed this lawsuit as trustee of the Edith Heinemann Harris Trust ("Heinemann Harris Trust") and the Complaint specifically references both Demand Promissory Notes. The amended version of the 1988 Trust Document was submitted by Plaintiff in response to Defendant's Motion, and neither party questions its authenticity. The Court also takes judicial notice of the remaining documents submitted by both parties as they are documents on file in other state courts. Dkt. # 5 Ex. 3; Dkt. # 6 Exs. 6-16; Dkt. # 7 Exs. 17-19; Dkt. # 12 Ex. 2.

The following is taken from Plaintiff's Complaint, which is assumed to be true for the purposes of this motion to dismiss, as well as other documents that have been judicially noticed as noted above. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Plaintiff is Trustee of the Heinemann Harris Trust. Dkt. # 1. Defendant is a trustee of the August B. Mundel and Joan Webb Mundel Trust (the "1988 Trust"). *Id*. at ¶ 2. The 1988 Trust has two co-trustees: Defendant, and Laurence Harris. Dkt. # 12 Ex. 1; Dkt. # 5 at ¶ 4; Dkt. # 11 at ¶ 3. Laurence Harris is the husband of Plaintiff. Dkt. # 11 at ¶ 4. The 1988 Trust was formed by August B. Mundel and Joan Webb Mundel, who married in 1969. Dkt. # 5 at ¶ 2. Joan had three children from a previous marriage: Timothy Harris, Laurence Harris, and Geoffrey Harris (the "Harris Family"). *Id*. All three Harris children are beneficiaries of the 1988 Trust. Defendant and two of his nieces, Helaine Libowitz Miserendino and Wendy Waxman (the "Mundel Family"), are also beneficiaries of the 1988 Trust. *Id*.

On or about July 3, 2007, the Mundel Family, filed a lawsuit against Timothy Harris in the New York Supreme Court for Westchester County (the "New York Lawsuit"), alleging that Timothy had misappropriated nearly $1,000,000 in assets from the 1988 Trust. Dkt. # 6 Ex. 6. On June 10, 2010, the parties in the New York Lawsuit reached a settlement. Dkt. # 6 Ex. 8. At that time, Anthony Piscionere represented that he was counsel for the Harris Family. Dkt. # 6 Ex. 7. Laurence Harris and Geoffrey Harris were not named parties in that dispute. Dkt. # 5 Ex. 3. The parameters of the stipulation of settlement were stated on the record. Dkt. # 5 Ex. 3. The parties agreed that their experts would work together to determine the "amount of monies that should be in all of the trusts and the Estate of Joan Webb Mundel," and that the trusts included "the 1988 Trust . . . a 1988 [sic] Trust, a 2005 Trust, and the Heinemann Harris Trust, to the extent that it applies to these parties' monies." *Id*. at 3. On August 10, 2011, Steven Kaplan was appointed as an "impartial accountant" and instructed to ascertain the value of all of the assets of the 1988 Trust, the Mundel Life Insurance Trust (the "1998 Trust"),

the 2005 Joan Webb Mundel Living Trust (the "2005 Trust"), and the Heinemann Harris Trust "to the extent that trust contains assets of the aforementioned Mundel Trusts and any other trust containing assets of August or Joan Mundel." Dkt. # 6 Ex. 8 at 2; Dkt. # 5 at ¶ 6. The August 10, 2011 Order also states that after Kaplan determined the value of all of the assets, the determination would be binding on all of the parties and on Laurence Harris and Geoffrey Harris, and that the Court would then issue an order and judgment distributing the assets in the agreed upon percentages as set forth in the June 10, 2010 stipulation of settlement. *Id*. Kaplan made interim determinations in November 2013 and March 2014, and a final arbitrator's determination in September of 2014. Dkt. # 6 Exs. 9-11.

On October 3, 2014, the Mundel Family moved to confirm the September 2014 arbitrator's determination and for entry of judgment. Dkt. # 6 Ex. 12. Timothy Harris' counsel filed a response to the Motion requesting that the New York state court stay execution of a final judgment until the parties' related obligations and payments were determined and satisfied. Dkt. # 6 Ex. 13. On November 15, 2014, Timothy Harris died. Upon his death, Laurence Harris took his place as co-trustee of the 1988 Trust. On September 8, 2015, the New York state court granted the Mundel Family's motion to confirm the arbitration award. Dkt. # 6 Ex. 14. Timothy Harris' executor did not oppose the confirmation of the award, arguing instead that the Mundel Family was not entitled to the judgment until the trust's assets were liquidated to satisfy the arbitration award. *Id*. The judgment was then amended on April 6, 2016. Dkt. # 6 Ex. 16. On May 25, 2016, the Mundel Family registered the September 8, 2015 Judgment in Snohomish County, Washington. Dkt. # 7 Ex. 17. On October 28, 2016, Laurence Harris, in his capacity as co-trustee of the 2005 Trust, beneficiary of the Estate of Joan Webb Mundel, and co-trustee of the 1988 Trust, and Plaintiff, as co-trustee of the 2005 Trust, filed a motion for order vacating the September 8, 2015 Judgment. Dkt. # 7 Ex. 18. On November 28, 2016, the New York state court issued an order to show cause and temporary restraining

order imposing a stay of all actions and efforts to enforce the September 8, 2015 Judgment. Dkt. # 7 Ex. 19. Pursuant to this November 28, 2016 Order, the parties to the Washington state court proceedings agreed to stay the matter pending resolution of the New York Lawsuit. *Id*.

There are two promissory notes at issue in this case: Demand Promissory Note (09) and Demand Promissory Note (10). Dkt. # 1 ¶¶ 7, 8. Both promissory notes are dated February 21, 2007 and are made out to Plaintiff. Dkt. # 5 Exs. 4, 5. Demand Promissory Note (09) is for the original principal sum of $192,664.35 and is witnessed by Laurence Harris and signed by Timothy Harris in his capacity as trustee of the 1988 Trust. Dkt. # 5 Ex. 4. Demand Promissory Note (10) is for the original principal sum of $85,219.99 and is also witnessed by Laurence Harris and signed by Timothy Harris in his capacity as trustee of the 1988 Trust. Dkt. # 5 Ex. 5. The total original principal sum of both promissory notes is $277,884.34. The Heinemann Harris Trust is the assignee and holder of both promissory notes. Dkt. # 1 at ¶ 11. Defendant alleges that these notes were included as part of the settlement of the New York Lawsuit.

The Heinemann Harris Trust is mentioned in all three arbitration determinations issued in the New York Lawsuit. In the November 2013 determination, Kaplan noted that funds were transferred from the 1988 Trust to the Heinemann Harris Trust and subsequently transferred back. Kaplan questioned the propriety of the transaction. Dkt. # 6 Ex. 9. In the March and September 2014 updated arbitration determinations, Kaplan stated that he received additional information from Laurence Harris, some of which related to "the issues of loans and [settlement] related issues concerning the Heinemann Trust." Dkt. # 6 Exs. 10, 11. According to Kaplan, Laurence Harris expressed his view that "loans 9 and 10 are Investments in demand promissory notes totaling $277,884.34. [Laurence Harris] further annotated that loans 9 and 10 are unregistered securities. The gist of this is that he justified the loans as investment securities. . . ." *Id*. Kaplan further stated that, whether or not the loans were lawful by the terms of the trust, "[the

Heinemann Harris Trust] has put forth funds with an expectation of repayment and such outstanding balances shall be respected." *Id*. However, "as with all other loans discussed in the initial determination, there shall be no provision for interest." *Id*.

Plaintiff filed this lawsuit on July 21, 2017, seeking entry of a judgment against the 1988 Trust for the amount owed on both promissory notes, legal fees, and other costs. Dkt. # 1. Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. # 4.

### III. LEGAL STANDARD

#### A. FRCP 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. DISCUSSION

### A. Res Judicata

"Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper. *Id.* "'*Res judicata* . . . bars litigation in a subsequent action of any claims [or issues] that were raised or could have been raised in the prior action.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)); *see Clements v. Airport Auth.*, 69 F.3d 321, 329–30 (9th Cir. 1995). Though technically an affirmative defense, the doctrine is properly raised in a motion to dismiss when all necessary facts are properly subject to judicial notice. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

Plaintiff argues that *res judicata* is not appropriately applied to this matter because the claims at issue are "entirely different" than the claims in the New York Lawsuit, and because Plaintiff was not a party to that lawsuit. *Res judicata* applies where there is: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002); *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). The Court is under the impression from the submissions of the parties that the facts underlying this case are much disputed. In fact, Plaintiff argues that it "disputes nearly everything [Defendant] says about the New York Lawsuit and the [Heinemann Harris Trust's] supposed role in it. " Dkt. # 10 at 6. While Plaintiff may dispute Defendant's characterization of the New York Lawsuit, the Court finds that there is no reasonable dispute as to the facts necessary to determine whether *res judicata* applies in this case.

The parties do not dispute whether there was a final judgment on the merits. While the New York state court issued a show cause and temporary restraining order imposing a stay of all actions and efforts to enforce that judgment, a final judgment was still entered in that case. The Court also finds that there is an identity of claims. In determining whether the present dispute concerns the same claims as a prior lawsuit, a court considers "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005) (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)).

The promissory notes at issue in this case are specifically mentioned in the March and September 2014 arbitration determinations in the New York Lawsuit. Dkt. # 6 Exs. 10, 11. For Plaintiff's claim that "[t]here is no overlap between the claims asserted here and the claims asserted in the New York Lawsuit" is disingenuous. Kaplan references Laurence Harris when discussing these notes and whether they should be considered loans or "unregistered securities" for the purposes of determining the assets at issue in that case. Kaplan ultimately concluded that the Heinemann Harris Trust gave the 1988 Trust funds with an expectation of repayment and that the "outstanding balances shall be respected." *Id*. Kaplan also noted that these "loans" would be treated similarly to other loans discussed in the determination with regards to provision of interest. *Id*. In dividing the assets related to the 1988 Trust and the other trusts in the New York Lawsuit, the promissory notes at issue were clearly considered and settled in the accounting of the total amount of assets available. The 1988 Trust assets were distributed pursuant to this accounting and requesting that this Court enforce these notes would be an infringement of the rights established by the prior judgment. While this lawsuit represents a small

portion of the issues raised in the New York Lawsuit, they both involve the same underlying "nucleus of facts".

Plaintiff attempts to bypass this determination by focusing on its allegation that the Heinemann Harris Trust lent the 1988 Trust money and that the money has not been entirely paid back. Plaintiff argues that regardless of what "credit" was given to the Harris Family for the promissory notes, the Heinemann Harris Trust was not a party to that lawsuit and did not receive that "credit". Therefore, the obligation to pay the remaining balance remains. Dkt. # 10 at 9. For the purposes of this Motion, the issue is not whether the Heinemann Harris Trust actually received the outstanding funds, but whether the Heinemann Harris Trust is in privity with the defendants in the New York Lawsuit such that it is bound by the decision reached in that case. "Privity . . . is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052–53 (9th Cir. 2005) (internal quotations and citations omitted). "[P]arallel legal interests alone, identical or otherwise, are not sufficient to establish privity, or to bind a plaintiff to a decision reached in another case involving another plaintiff." *Id*. at 1054.

Where a litigant was not a party to the earlier litigation, adequate representation is a due process prerequisite to precluding a plaintiff from "his day in court." *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 800, 116 S. Ct. 1761, 1766, 135 L. Ed. 2d 76 (1996). Plaintiff and the Heinemann Harris Trust were not parties to the previous lawsuit, therefore a finding of adequate representation is necessary to find that they are bound by the decision made by the New York state court. Plaintiff argues that the Heinemann Harris Trust had no knowledge of the events that resulted in the entry of judgment in the New York Lawsuit and did not know that judgment had been entered until May of 2016. Dkt. # 10 at 10; Dkt. # 12 Ex. 2. However, Plaintiff's husband, Laurence Harris, was actively involved in the New York Lawsuit. By his own admission, he provided

information to Timothy Harris, Timothy Harris' wife, and Timothy Harris' counsel, to assist with the accounting of the "assets, liabilities, and expenses" at issue. Dkt. # 12 Ex. 2. This information specifically includes an accounting of the promissory notes at issue; notes that were made out to Plaintiff, signed by Timothy Harris, and witnessed by Laurence Harris. It does not follow that Plaintiff or the Heinemann Harris Trust would be ignorant of the New York Lawsuit or that the notes at issue were part of that litigation. Due to Laurence Harris' assistance, the promissory notes were established as loans to the 1988 Trust and the arbitrator determined that the "outstanding balances should be respected" during the final accounting. Further, in the March 2014 arbitration determination, Kaplan noted that issues and concerns arose regarding "who represented whom" and whether there was an appropriate production of documents. As a result of these concerns, Kaplan reviewed further information provided by Laurence Harris regarding the issue of loans and their relation to the Heinemann Harris Trust. Dkt. # 6 Ex. 10. It is because of Laurence Harris' representation that the promissory notes were specifically considered and mentioned in the arbitration determination.

The Court recognizes that Laurence Harris is not the Plaintiff in this case, nor is he a trustee of the Heinemann Harris Trust. However, "privity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081–82 (9th Cir. 2003). "[A] relationship of privity can be said to exist when there is an express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues." *Id* (citations omitted). Plaintiff urges the Court to treat the Heinemann Harris Trust as completely separate and apart from the parties involved with the New York Lawsuit, contending that it had "virtually no connection to the matter." Yet, the Heinemann Harris Trust was so completely entangled with the 1988 Trust and Laurence Harris that the state court appointed a third-party accountant to puzzle out what assets truly belonged to which

entity. Dkt. # 6 Exs. 9-11 ("Funds were transferred to the Heinemann Harris Trust and subsequently transferred back. Was there propriety to the transaction, and should it be treated as a loan or investment?"). The notes in question are not the only sale or exchange between the two entities. Kaplan suspected that the Heinemann Harris Trust "borrowed" a securities portfolio from the 1988 Trust in order to benefit from the appreciation before returning it, couching the transaction as a loan. *Id*. Kaplan also determined that there was a "loan program" of "tax motivated gifting and related borrowings" that were improper. The assets involved in the prior litigation were so entangled that it took Kaplan three years to issue a complete determination. It is not for this Court to decide whether the arbitration determination and the resulting judgment was valid. However, the evidence on the record establishes that the Heinemann Harris Trust is not as removed from the state court proceedings as Plaintiff alleges. Timothy Harris acted as a representative for the interests of the Harris Family, and Laurence Harris was actively involved in those proceedings. Timothy Harris, the 1988 Trust, and Laurence Harris had an implied legal relationship by which they were accountable to the Heinemann Harris Trust. As it is clear that privity exists between the Heinemann Harris Trust and the parties in the New York Lawsuit, the Court finds that the doctrine of *res judicata* applies, and Plaintiff's claims are precluded.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 4.

Dated this 26th day of July, 2018.

_____
The Honorable Richard A. Jones
United States District Judge